All 2268 people leave Paul Dodds. Both sides can approach. Just identify yourselves, please. For the record, my name is Ian Barney, B-A-R-N-E-Y, on behalf of Paul Dodds, the appellant. Assistant State's Attorney Anthony O'Brien for the people. Just a few preliminary comments. One, we may, because of the fact that we were unable or you were unable to get certain documentation, we may have to even remand it for that alone. I'm not saying it will, but we'll discuss that after we hear what you have to say. Secondly, just one point that I, in all my years, have never seen a case where you have everybody on it less than fully confident from A to Z, from the judge, the state's attorney, the defense attorney, and now the clerk's office. So with that. But present company certainly accepts it. We're the cleanup crew. We came with soap and nothing. All right, proceed. And you said it was Mr. Barney? That's correct, Judge. You're not the one that did the brief? Judge, my phone is damaged. We did the brief together. All right. We work out of the same office. May it please the Court. As I stated, my name is Ian Barney, B-A-R-N-E-Y. Myself and Damon Charonis represent Paul Dodge, the appellant, in this case. There were primarily three issues that were raised in the brief to this Court on appeal. But without abandoning or waiving any of those issues, I'd really like to focus on one of those issues in particular. And that issue is ineffective assistance of counsel. And when you look at the claim of ineffective assistance of counsel in this case and put it in the context of the guilty plea in the record, this case is really about a failure of the justice system that led Mr. Dodge to plead guilty to possession of child pornography based on what was essentially flagrant and just gross misadvice of his counsel at the plea hearing. And unfortunately, Mr. Dodge did not find out that that advice was wrong until over a decade later. His lawyer did seem concerned that it might be wrong. Judge, his lawyer, I will agree, his lawyer seemed concerned that it was wrong. There were some red flags there in the transcript. Judge, I tend to agree with you. And I think that in retrospect, this is an issue that should have never been missed by anybody, including the state's attorney on the case who gave Mr. Dodge a notification form notifying him that he was to register for a period of 10 years. But especially by Mr. Dodge's attorney, who had an obligation, obviously. Maybe all three of the people in the courtroom should have had a probation officer supervising them. Because the probation office was the first one that came up with the solution or the requirement. What I want to ask you about, Mr. Barney, is that the state in its brief cites and discusses People v. Hall, which is Justice Kilbright's decision in our Supreme Court. You didn't address that in your reply brief at all. You talked about Presley, but you didn't talk about Hall. Explain to me your way to remove, as it were, Hall as an impediment to granting the relief that you're seeking. Sure. And that goes right to the heart of what I want to talk about today. And that's prejudice. Prejudice is what's at issue here. And the Court is correct that in the reply brief, I didn't specifically mention Hall. I did address Presley. In my view, Presley relies on Hall in large extent. It's the same framework. There's one big difference. It comes from an appellate court, not our Supreme Court. The Court is absolutely correct on that. But for purposes of this case, the framework is what is important. And the question is, does the framework that's set out in Hall, does that govern this case? And the answer to that question, in Mr. Dodd's view, is A, no. And B, even if it does, Mr. Dodd should still prevail. And the reason for that is going to the court. Well, let's start with the first one, that it doesn't govern it. Explain why it doesn't govern it. Judge, first off, People v. Hall has to do with an instance where it was a post-conviction hearing act. And the defendant was, I think, not properly advised regarding sex offender registration. But doesn't it, you know, I understand where you're going, and I apologize for interrupting, but doesn't it come up with a way to test the circumstances under which someone who says, if I had known what I should have known, I would not have entered a guilty plea? And doesn't Hall say, you need to say not only that I wouldn't have undertaken a guilty plea, but to show either innocence or that there was a viable defense? Two things in response to that question. One, I don't believe that Hall says you have to show a claim of innocence or provide a plausible defense. What Hall says in that respect is the inquiry of whether or not the outcome would have been different rests in large part on whether or not you can establish that there is a plausible defense or a claim of actual innocence. And here you're saying there is a plausible defense. Judge, what I'm saying is that that is one inquiry. There is, A, a plausible defense here. But, B, there's another inquiry this Court can make, and that's the one that's made in actually Hill v. Lockhart, the United States Supreme Court case that applies Strickland to guilty pleas. And the inquiry that the Court made in that case wasn't this habeas petition is denied because there's no plausible defense or claim of innocence. What the Supreme Court said was this petition is denied because the petitioner did not make a claim, did not state a claim that he would not have pled guilty had he been advised properly, and he did not allege any special circumstances that did not, any special circumstances that would support the conclusion that had he been properly advised, he would not have pled guilty and he relied in large, that the advice played an integral part in him pleading guilty. The problem I'm having with your argument, Mr. Barney, is that you're saying, but look at Hill. As I read it, Hall is Illinois' expansion upon Hill by which we are bound. I would have no problem with your interpretation of Hill and the lesser requirements that Hill places on a defendant under these circumstances. My focus in my questioning, and I apologize if I haven't been clear, is that if we assume that Hall expands the requirements that a defendant needs to show in Illinois under these circumstances, if Hall is indeed an expansion by which we are bound, how do we answer that? Judge, because Hall does not say that the Court must find that there is a plausible defense or a claim of actual innocence, and I'd encourage the Court to read Hall carefully, because if you look at it, the language is- Well, I'll ignore the implication that we have. Let's go ahead. I apologize. I didn't mean to leave that implication. But we would never claim to the contrary. The actual language of Hall is the inquiry of whether the outcome would have been different rests in large part on whether or not there is a plausible defense or a claim of actual innocence. It doesn't say that that is dispositive. And I think that's important because, and again, I'm going back to Hill, and it's not to dodge Hall. It's just I think if you read them in conjunction, there's one avenue is you put forward a plausible defense. That's one avenue to challenge, to establish prejudice. Another avenue would be to do what exactly the Supreme Court said and Hill wasn't done, which is make an allegation or make an assertion that you would have gone to trial had you been properly advised and provide special circumstances that support that the reliance on the advice played an integral part in the plea. In this case, Mr. Dodds has provided both an assertion and an affidavit that says he would not have pled guilty had he known the registration requirement was a 10-year period. And he's also provided the court with special circumstances that support that claim. Is there anything in the record that would establish any type of a plausible defense had he gone to trial, although you don't seem to be arguing that in your brief? Is there anything in there? Judge, in the record as it is, and this is not including obviously the supplemental material, I don't know if there is anything. I don't think there is. All there is in the record is the proffer by the state at the guilty plea providing support for Well, somewhere in there is reference to the age of the victim. And knowledge maybe of the age of the victim. And, Judge, I think that was part of our argument at the trial court level was Mr. Dodds would have tested the state's ability to prove beyond a reasonable doubt that he was actually guilty of the crime, and that would include proving Dodds' knowledge of the age of the victim, proving that when he was in receipt of the material that he was in receipt of, that he actually knew that the individuals that were depicted in the photographs were underage. And, unfortunately, we didn't have the benefit of viewing those photos, and we didn't have the benefit of You mean now because of it not being Correct. At the time, counsel did. So I think there is a plausible defense. I think the defense would be the state can't prove that Mr. Dodds knew that the individuals depicted were underage. That would be his plausible defense. But as far as the record is fairly sparse with regard to any other defenses that may have been violated. Again, we're saying the record could be acquired because of the inability of the clerk's office to provide it. Correct. And I would No, I just wanted that clear on the record. Correct. And to address Hall again, I don't think this Court is bound by Hall. If you look at People v. Korea, and that's a First District case and then a Supreme Court case Well, we're certainly bound by Hall. I think what you're really arguing is that it doesn't control this case. That is, that's a more accurate way to say it. Yeah, that's the accurate way to say it. The accurate way to say it. It doesn't control in this case. And the reason why it doesn't control in this case, Judge, is because, first off, it's never been explicitly overruled. There's no case that explicitly overrules Korea. And But wait a minute. Korea comes way early in this process. 1985. Yeah. I mean, it predates Hall. It doesn't even expressly discuss the prejudice prong at all, Korea. It does not. But obviously, Hill does. And so Korea is a case that was decided at a time when precedence and jurisprudence on this issue was markedly undeveloped in comparison to what we're looking at now. That is absolutely correct. I do think that although Hall does not specifically use the term prejudice, it applies strictly. And it does so. If you read the opinion, and I know the Court has, it starts out by going through incompetence. And it measures the constitutional, whether or not the counsel's representation fell below an objective standard of reasonableness. It doesn't say then, now to establish the prejudice prong. But the next step that the Court takes is it says, counsel's performance was relied on by the defendant, and that performance caused his plea to be involuntary. And therefore, counsel was ineffective. We're talking about Hall and really ignoring, for the purposes of this discussion, two other appellate cases, Clark and Pena-Romero, and another Illinois Supreme Court case, Hughes, which seem to be continuing to follow in that view that Hall appears to articulate. What do you say about those cases? Especially Hughes. The Court's correct that those cases articulate the same framework that is in Hall. There's no doubt about it. But I'd point the Court also to a 2008 case, People v. Manning. It's an Illinois Supreme Court case. And in that case, it's dealing with ineffectiveness. It cites Correa, and it says, quote, whether defendant's plea was knowingly and voluntarily made depends on whether the defendant had effective assistance of counsel. That's the reverse way of saying the exact same thing that the Court said in Correa, and it cites to Correa for that proposition. So I disagree that Correa is dead law. I think there is absolutely a – there is, I guess, two different sets of case law on this issue. And I would – So you're saying the Supreme Court is speaking with two voices on this issue? Judge, I'm not saying that they're speaking with two voices. I'm trying to understand what you're saying. Judge, I'm saying that there's two different passive law on this issue, that Correa is not dead law, and that in instances where the advice given by counsel is affirmative misadvice and it's gross affirmative misadvice, I think the inquiry should be for prejudice. Was the plea voluntary or involuntary? Did the counsel's representation render the plea involuntary? If it did, that's prejudice. And the reason why is because when an individual pleads guilty, they're giving up important, important constitutional rights, including the right to a jury trial, the right to be confronted by witnesses, the right to challenge the state's evidence and to be proven guilty beyond a reasonable doubt. It would be, I think, unreasonable to say that the plea is involuntary, but there's nothing we're going to do about it because there's no plausible defense that the individual would have won a trial. The damage is done. The plea is not voluntarily made. The constitutional rights are not voluntarily relinquished. And I think that is essential. That's substantial prejudice under Correa. And I think if you look at Manning, which cites Correa, it's essentially what it says. If the defendant's plea was not knowingly and voluntarily made, the knowing and voluntariness depends on whether counsel was ineffective. That's the same thing that Correa says. And that's in 2008, and that's an Illinois Supreme Court case. And, again, I want to move on to even if this Court doesn't accept Mr. Dodd's proposition that involuntariness is essentially prejudice, I think Mr. Dodd still prevails. And he prevails for a couple reasons. One, he asserted in his affidavit he would not have pled guilty had he known that the registration period was for life. And if you look at the record in this case, you look at the transcripts from the motion for a clarification of sentence, the advice in this case was just so grossly wrong. But not only that, it's documented. It's essentially stamped with the court's imprimatur. The trial court says, yeah, it's a ten-year period. That's the law.  That's it. The State's attorney doesn't correct it. If the defense lawyer, pardon for the interruption, if the defense lawyer at the time of trial knows that the judge and the prosecutor are wrong about the ten years and that the statute actually calls for reporting for life, is that something that a defense lawyer would have a duty to advise the court about? The defense lawyer or the prosecutor? Defense lawyer. Would the defense lawyer have an obligation to? You're talking about the transcript here where the defense lawyer says, look, probation says it's for life, and, you know, you're saying it's ten years. If he has done or she has done the research and knows that, in fact, the court is wrong, acting under misapprehension, and so is the prosecutor, does the defense lawyer have a duty to so inform the court? I think so in this particular case. So he stands up and says, judge, I know you want to give him only ten years of reporting, but my client needs to be given life for this. But in essence he did that when he brought it back, meaning he may have known that it was, in fact, and he wanted it on the record that they're still going to do that, but he's still ineffective. But he makes it even worse when they further compound it. In Justice Lavin's question, aren't you really assuming a situation where the lawyer knew? Aren't you really rewarding keeping information from the court? And if you presume the lawyer knew what the law said but the prosecutor didn't and the judge didn't? Well, I don't think any benefit endured to Mr. Dodds in this case. Well, sure, this appeal. Without this appeal, he would have just done his, assuming you're trying to undo, in essence, what the law required. That's correct. But had Mr. Dodds known at the time that the period was a lifetime, he said as much. He would have gone to trial. We wouldn't be here because there wouldn't have been a guilty plea. So, no, I think the defense attorney in this particular situation would have had an obligation because he's not serving his client's interest by keeping silent as to the registration period. That's something that's going to catch up with Mr. Dodds one way or another, and, in fact, it did. And it wasn't until 10 years later, after he thought his registration period was over, that he was advised he had to keep registering. And now he's left holding the bag, and he has almost zero appellate options aside from a post to a 1401 petition. So I don't think there is a benefit that was given to Mr. Dodds by either Mr. Pye's unknowing, I guess, misadvice or at least knowing silence and complicitness in this 10-year registration period kind of fiasco. But I think he would have had an obligation to do something. We'll go on with your other argument. Unless you feel like you've made the argument you want to make. Well, I just want to leave the court with a couple last points. First off, Korea is not that law. It has never been overturned, and the Supreme Court has used it as recently as 2008. I think that's important. I know there is another kind of area of case law on this subject, and it differs from Korea. Those two areas, those two paths need to be reconciled. I think Korea applies in a very particular situation, a situation where an individual is grossly misadvised. That's the case here. The prejudice is that his plea was rendered involuntary. Prejudice again. You're not addressing Tice's arguments, which Justice here has raised some, but in Hughes, there's a point where she's saying there was insufficient prejudice. How is it different here from Hughes? Judge, I'm struggling to recall Hughes, but in Hughes, I don't believe the advice was affirmative misadvice, if I'm correct. I think here it's different because the advice is affirmative misadvice. The defendant was told something that was not true. He relied on that in pleading guilty. As a result, his guilty plea is not voluntary. I think the case law is fairly clear on that point. Now, the court, to say that his plea is not voluntary but we're not going to disturb it, we're going to let it stand, I think would be anathema to justice and to fairness. This is a situation where this man rendered an involuntary guilty plea. This court has an opportunity to correct the record, to give him an opportunity to go to trial with the correct information. I think this court should do that. However, I will just mention again, even if this court doesn't adopt Korea or doesn't look to Korea for guidance on the framework, Mr. Dodds still prevails. He's met the requirements in Hill v. Lockhart. He's established a plausible defense that he would have relied on the state's inability to prove knowledge of the age, and for those reasons, prejudice is established. I'll reserve the remainder of my time for follow-up, if I may. Thank you. Thank you. Good morning, Your Honors. I'm the court assistant state's attorney, Anthony O'Brien, on behalf of the people. The defendant has failed to establish an effective assistance to counsel because he cannot establish prejudice. How can you say that? I mean, seriously. I just said. I mean, just seriously. How can you, in good conscience, say that we had a competent person in that courtroom on that day? Oh, well, that I don't know. That we don't dispute. I mean, the first part of it. You're conceding the first part. Oh, absolutely. Yeah, the first, and in our briefs, we do. I mean, we're not saying that he did a bang-up job. Certainly, this was a mistake, right? So, but that's only half of the equation, right? There's two parts to strict leniency, and he has to prove a prejudice, and that's what he did. I am saying, okay, but that's what you're saying, prejudice, not prejudice. Just prejudice, yeah. Okay. I'm not defending the advice that he gave them. So we're left with the second half of it. So now counsel raised two ways of prejudice. Attack them. Okay, well, he says that just by he wants to rely on the CREA decision. The problem with that is that after that, we have Hill, we have Hall, we even have Padilla, all of which say you have to explain why going to trial would have been a rational choice. Well, let me ask you this, Mr. O'Brien. It seems to me when you take a look at Hill and even at Hall, what they're really getting at in essence is, okay, you say you would go to trial, but we're going to test the veracity of that assertion by asking you to show me either that you're innocent or that there was a plausible defense that you would have been able to assert that you gave up. So that by not going to, by the existence of those things, we can now believe that you would have gone to trial. Isn't that in essence what all of these cases talk about in the prejudice prong? Absolutely. All right. Well, here in this circumstance, you have not only the affidavit where he states he would have, but also the defense attorney filing a motion and going back before the sentencing judge saying, well, wait a minute, isn't this an error when we're being told by the probation officer that, or the probation office, that this is going to be a lifetime impediment on your privacy rights, your freedom rights, because you said, judge, and the state said, judge, that this was only going to be for a 10-year period. They take the step of filing that post-sentencing motion, which at least is another piece of evidence on the side of the scale that says, okay, this is really important to the defendant. If he had ignored that type of information, we wouldn't have that additional indicia that this was a matter of importance. So wouldn't you suggest or agree that at least that filing of the motion is another factor to consider in assessing whether this was really a deal-breaker for the defendant or not? Because if it was a deal-breaker, then it should go back. Okay. I'll respond. Good. Okay. So you say that the prejudice component is about testing the veracity. Okay. All right. So about whether he, I think there's a distinction between whether he actually would have gone to trial and whether going to trial actually would have been a rational decision. Okay. Because prejudice means something that you're losing out on something that could have been, could have affected the outcome of the case, right? So which the only thing that could affect the outcome is if you had a plausible defense or you're alleging actual innocence. It's not just because you could say, oh, I would have gone to trial. That could be a completely irrational decision because you have no hope of prevailing. Well, what about the issue of the age of the knowledge of the age of the people depicted? Well, we don't know anything about that, right? I mean, we don't, I mean, at this point. Well, do we have to if it's a plausible defense? Do you have to show the intent that he wouldn't, that he was insufficient? Well, sure, I guess. But, I mean, at this point, we don't know if that's his defense. We don't know anything about that. We're only speculating. I mean, he can come up here and say just about anything, right? I can't disprove it because we don't have the record. Well, we've got two distinct things here. We've got a case where there's a definite wrong. And then we've got the legal clarification issue of what's to occur in the future, like what is sufficient under the second prong. I mean, putting even this case aside, you've got a question, what does a person really have to show clearly? And this case just magnifies it as to the ignorance that was created here because nobody analyzed things properly. So now going back to the prong, what is sufficient if that is in the record that, and I understand we only have a partial record, or we don't have really any record as to the trial court, but counsel did say it was raised at the trial level actual possibility of not knowing the age of. So let's assume that is a fact. Assume that as a fact. Where do you go now? Do we have a basis to remand it then? Have we met the test? Oh, okay, so if we assume that his 214-01 alleged a plausible defense? I'm saying that if you say that he doesn't know if he's a minor, is a plausible defense. Well, I mean, I suppose, I mean, that's going to the sufficiency of the allegations in it. I mean, he could allege in there and he says that I didn't know the age of the victim. I thought this was. Okay, now you as a state must prove he didn't. No, no, I'm sorry, I don't. It's his burden to plead it. It's not our. No. No, if he pleads it, so, I mean, perhaps he has to have some, I mean, it's a 214-01, right? He's got to attach some sort of. Well, we're looking at the level here, but we're also looking at the level at trial, that had he alleged it and said I want to go to trial. I think what Justice Smith is asking is if at the trial level they asserted that defense, it would be the burden of the state to prove. Right. Oh, yeah, I mean, assuming that's, you know, to be honest with you, I'm not sure about what the child pornography law requires. Okay, but. But, I mean, notwithstanding, okay, assuming that, sure, we would have to carry our burden. Okay, so now bring it back to this stage that that occurred. That he did allege that? Yeah. Well, I mean, I suppose he would have to, what, have an affidavit or something attached to it, something to prove up the credibility on the 214-01. But, I mean, at the very minimum, he should have alleged it in the 214-01. I mean, imagine, like, a post-conviction petition, right, or these collateral devices. You allege, you make allegations, right, and if you don't, say, have the evidence with you, you can explain why you don't have it. We don't have any of that here. There's no allegation about what his defense would have been, that he was innocent or he had some sort of affirmative defense. Somewhere in there I read that he stated. No, in the 214-01? Then I can't recall. Oh, no, and there's nothing in the trial record about him saying he had any kind of defense at all. I don't recall ever seeing anything like that. So it's just in the brief? It's not even in the brief. I mean, I heard it for the first time today. Yeah, it's not in the brief. It's in the pleading. Yeah, it's not in the brief, and as I alluded to in questioning Mr. Barney, we're speaking about now something for the entirety of the argument that he doesn't respond to in his reply brief in an argument about evidence that was never cited in the reply brief or the opening brief. Yeah, and, Your Honors, I think a lot of this, what it comes down to is where this stands today, like the procedural posture of it. I mean, this comes to the court, or initially on the 214-01. The allegations that he has to plead to prove up his innocence. But you've waived all that. Pardon? In effect, you waived any objection to the 14-01. Why? You never raised it. Never raised what? In your brief. And you said, well, go ahead. No, I'm saying that, Your Honor, when he pleads his 214-01 petition, right, he has to there include the allegations establishing prejudice. We don't have them. So, I mean, now on appeal to step back and speculate as to what perhaps he could have alleged. We're way past that now. I mean, he could have below asked to, I mean, I believe when we responded to the 214-01, we had said he had failed to allege proper prejudice. He could have asked to amend his pleading. He didn't do that. So, I mean, that's how this comes to the court now is effectively a deficiently pled 214-01, right? It was dismissed because the allegations he needed weren't there. So when this case was in the trial courts, when he could have gotten this information, when he could have alleged it, it didn't happen. Not until it goes up onto appeal and we respond by saying, no, for prejudice you have to allege. We actually said this in the trial court as well, that you have to allege what plausible defense you had or is this actual innocence. Do we get some sort of development on this argument? I mean, we're way past the point of whether the defendant can allege this. I mean, so there's no need for us to speculate about what his defenses may have been. He didn't allege them in the first place. So, I mean, we're past that point. So, I mean, for the purpose of a remand, the remand would be substituting what the defendant should have done a long time ago, which was to amend his pleading. He knows, I mean, the law was sufficiently clear. He knows what Hall requires. He knew it because we challenged the petition on that grounds in the trial courts. So, I mean, to send it back, it's a mulligan to replete. He had the opportunity to do it, and it's not there. So, I mean, at this point, to speculate as to what the record may be, what sort of defenses he may have, we're past it. If it's a mulligan counsel, there are three people waving the club at the ball and missing it. You've got the judge giving them the wrong information. You have the prosecutor giving them the wrong information. You only have the probation. You have the defense lawyer giving them the wrong information, and you only have the probation department being accurate. And you're talking about something that they can call a collateral consequence, but it's a little bit more than collateral when you think you only have to do it for ten years, and then ten years and one day comes up and they say, uh-uh, you've got to do it the rest of your life. An injustice was done here. Well, I don't doubt Your Honor, you're absolutely right, that there was three people made a mistake in the trial court below during the plea proceedings and afterwards when he filed the motion. And I also understand Your Honor's point as well about whether, you know, distinctions between direct and collateral. But if you look at the Hughes case, for example, what did they talk about collateral consequences? They talk about how grave the liberty interest is involved, right? That Hughes involved a, was it involuntary commitment for sexually dangerous offenders? Right, so, I mean, you have that. I don't think it helps you to minimize the imposition of this reporting requirement because the failure to abide by the reporting requirement for whatever reason, strict liability violation of a criminal code which will result in incarceration, a sword of Damocles hanging over someone's head for the rest of their natural life. This is arguably much stronger than a deportation because you're in a situation where for the rest of your life, no matter where you seek to go, you're going to have this requirement imposed upon you, which is a restriction on your freedom and your privacy, the violation of which will be, for whatever reason, a criminal act. So I'm not sure that's a path you want to go down. Well, I can certainly understand it. I don't want to minimize what it is. I know it's a lifetime obligation that he has to serve. In the case where he got probation, right? Right. Which means it was a minimal event. Well, I mean, a minimal event because he took probation. I don't know how we can not take that into consideration because we're trying to figure out what would the defendant have done. Would he have gone to trial or not? And the consequences that he was facing by pleading guilty, regardless of whether or not he thought he could prevail at trial, were probation and reporting. And he was concerned that it was not reporting for more than ten years or that it was just reporting for ten years. The minimal record that we have is quite evident or quite clear about that. So this is not a situation where a man was in prison for a number of years and then they had the reporting requirement that was misrepresented to him. I think the fact that it was probation, all of the factual circumstances that we're able to glean, are something we have to take into account in deciding whether or not an injustice occurred. Okay. Sorry for the switch. No, no. I understand Your Honor's point on that at all. And the only thing that I would add to it is that I can understand when you're about to plea, you do a calculus as to, you know, what am I facing if I plea versus what am I facing if I get convicted. Two things are true. If he pleads, he's going to have to register. If he goes to trial and gets convicted, he has to register. So those don't change. So he can face the same outcome no matter what he does. So what he has to evaluate is going to trial rational. Putting aside the penalties, is it rational? Because if I get convicted, you know, these collateral things are going to follow. So what makes it rational or not is whether or not he's going to get found guilty. In real life, in real life, when people make these decisions whether to go to trial or plea, there are certainly circumstances with which a defendant is presented, which would be deal breakers, which would be, well, under the circumstances, I'm willing to take a risk, which arguably would be of a more stringent sentence, either a longer term of probation or maybe even incarceration because of what we know will happen if we plead guilty. And what we're really doing on this whole case, because everyone concedes that the guy was given affirmative bad information at the time he did his plea, was whether it's plausible to believe on the record before us that this information would have affected his decision or not. And it's very difficult to do. And as I think we've all said, it's even more difficult because of the nature of the misinformation and the consequences of that misinformation that were conveyed to the defendant under these circumstances. Yeah, but, Your Honor, I think there's, I think that's confusing two points. You can sit there as a litigant and weigh your risks and say, what you're looking for is, is there some, would he genuinely have gone to trial? Yeah, you can look at somebody and say, boy, if I'm facing this lifetime registration, what have I got to lose? I mean, which is essentially the calculation, right? And maybe that's what the motion to clarify and these other things represent. Well, that sentiment is not necessarily rational, right? Because Hill and Hall is asking, what is your decision about whether you've gone to trial? Is it based on the likelihood of your success at trial? Well, Mr. O'Brien, if you're correct and we reverse and remand, you can test that out, because he will have the same decision presented to him. I mean, sure, you can go back, but then we're replaying what he should have done. With full knowledge of the consequences, wouldn't it? If we remand and he gets to replete everything? Sure, we can redo it, but he should have pled that in his 214-01, which is how we got here. So, I mean, procedurally, that's where we're at. And where you have the gross errors that concededly occurred, isn't there at least some persuasive way to say, well, if you are right, putting him in the same position to make the same choice with full information, if you think it would be completely implausible to go to trial, what is the harm in doing that? Well, I mean, I suppose that why we would do that on every case, right? Well, every case doesn't have this factual setting. Oh, no, but, I mean, we would just say, well, let's work our way down. I've never seen anything like this factual setting, but I've only been in practice for 35-plus years. No, I mean, it's definitely unusual, but, I mean. It's not unusual. It's total incompetence from A to Z. Okay, sure, but, I mean, but we have to, I mean, Hill and so forth, those are the requirements that we have. Yes, but don't you think this is unusual in maybe such as in where the guy could be put in jail for the sexual offense? They at least hold a hearing, right? In the Hughes case, they had to hold a hearing. Yeah. Okay, in this case, there's no remedy. There's really no remedy because once the sentence is imposed, it's absolute, he goes down. The only difference is he was misinformed at that stage, and there should be a remedy to correct that. Because he goes through life, maybe even today, say he walks by a school or he walks by a playground, and you have a goody-goody that stops and says, aren't you John Doe? John Doe, I'm telling the police, you're within 500 foot of this. He's going through life because of that. Yes, had he been properly advised up front, he'd be suffering the same consequences as how you view it. But I'm saying, no, maybe he would have gone to trial and maybe he would have won. So he didn't have proper advice at any level from anyone. And I say that is prejudice. I would say, what Your Honor said is that maybe he would have gone to trial and maybe he would have won is where Hall Well, even if he lost, he suffered nothing further. Right, but the prejudice is asking what's predicting the likelihood of success at trial. Right, that's what he'll tell you. If this case came before me on a remand, what would I do? I would change the charge. I would reduce it to something else and say he did his time. Now if he gets whacked, you've got this on record for future cases. But that's what I would have done because he's done an injustice. And no, we can't correct all injustices, but it sure seems that this is a sufficient injustice. All right. Thank you, Your Honor. Thanks, Mr. O'Brien. I have just a couple of very brief points. Go ahead. Just two very brief points. I don't want to miss anything here, but we did allege in the 214-01 petition on page 12 that Mr. Dodd's denied knowledge of the age of the alleged perpetrator. Right, and that's what the state doesn't want to. And nobody seems to have seen it except you and I. And it wasn't apparently worthy of putting in the brief? In retrospect, maybe that was a mistake. Judge, perhaps you are correct on that. In retrospect, I think you are correct. As far as prejudice, you were also correct when you noted that the ultimate inquiry for prejudice is really would this person, would they have gone to trial? And here we have an affidavit stating he would have gone to trial. If you look at the transcript from the motion to clarify sentence, his attorney says the 10-year registration period was negotiated as part of the plea agreement, which shows you it was important. It was an important part of the plea. And third, you have the motion to clarify sentence where when Mr. Dodd finds out it's a lifetime registration requirement, he comes back before the court, he asks the court to clarify that it's only 10 years. All those things go to the fact that this was an integral part of the plea that Mr. Dodd relied on. And in relying on that, obviously that information was incorrect. And I think there's sufficient information here for this court to find prejudice. Thank you. Thank you. You were both very good and entertaining. I say entertaining since I obviously don't agree with the State's position. But you both did your best with this, which is difficult because you have to represent the State. And I don't know what you would personally think if you – but the whole point is you guys did a nice job with a mess. Thank you. Thank you. We have a change in pattern. We lose one justice to gain another.